KAREN LECRAFT HENDERSON, Circuit Judge,
concurring in part.
I join the majority opinion but write separately on two points. First, under the federal sentencing standards regime announced by the United States Supreme Court in United States v. Booker, — U.S. -, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), and on the record in this case, I believe the sentencing court on remand can reasonably decline to consider award *446 ing Price any credit for accepting responsibility and instead resentence him to the term of imprisonment we vacate today, if not a longer term. Second, I believe that the majority reads our decision in United States v. Richardson, 161 F.3d 728 (D.C.Cir.1998), too broadly now that we have entered the post-Guidelines world.
Following Booker, a sentencing court is no longer “bound” to apply the Guidelines but must only “consult those Guidelines and take them into account when sentencing”; for our part, we now review a sentencing decision only for “unreasonableness.” 125 S.Ct. at 767. These changes flow from the remedy portion of the Booker opinion, in which the Court severed two provisions of the Sentencing Reform Act of 1984 (SRA or Act), as amended, 18 U.S.C. §§ 3551 et seq., 28 U.S.C. §§ 991 et seq. It first severed the provision making the Guidelines mandatory, 18 U.S.C. § 3553(b)(1), while concluding that the remainder of the Act “ ‘funetion[s] independently.’ ” Booker, 125 S.Ct. at 764-65 (quoting & citing Alaska Airlines, Inc. v. Brock, 480 U.S. 678, 684, 107 S.Ct. 1476, 94 L.Ed.2d 661 (1987)) (alteration in Booker). It also excised the provision of the SRA that “sets forth standards of review on appeal,” 18 U.S.C. § 3742(e), replacing it with “a practical standard of review already familiar to appellate courts: review for ‘unreasonable[ness].’ ” Booker, 125 S.Ct. at 765 (quoting 18 U.S.C. § 3742(e)(3) (1994 ed.)) (alteration in Booker). With these two modifications, the Court explained, “[s]ection 3553(a) remains in effect, and sets forth numerous factors that guide sentencing. Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable.” Id. at 766. The Booker decision applies “to all cases on direct review,” including this one. Id. at 769.
The district court’s duty to consult the Guidelines is, however, quite different from the previous duty to apply them mandatorily. Now, in setting a particular sentence, the district court must “take account of the Guidelines together with other sentencing goals.” Id. at 764. This means that the district court must consider the criteria set forth in section 3553(a), including the Guidelines sentencing range established for “the applicable category of offense committed by the applicable category of defendant” as well as policy statements of the Sentencing Commission. 18 U.S.C. § 3553(a)(4)-(5); see Booker, 125 S.Ct. at 764. The district court must also continue, the Supreme Court tells us, “to impose sentences that reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and effectively provide the defendant with needed educational or vocational training and medical care.” Booker, 125 S.Ct. at 765 (citing 18 U.S.C. § 3553(a)(2)). What the practical difference between the duty to consult the Guidelines and the duty to apply them means under the “reasonableness” standard of review will emerge only on a case-by-ease basis. But it is clear that the duty to consult the Guidelines neither reduces them to “a body of casual advice, to be consulted or overlooked at the whim of a sentencing judge,” United States v. Crosby, 397 F.3d 103, 113 (2d Cir.2005), nor maintains de facto the mandatory sentencing regime declared unconstitutional in Booker, 125 S.Ct. at 750, 756, 767.
Under the new sentencing regime, and on this record, I believe it would be reasonable for the sentencing court on remand to decline to consider awarding Price any credit for accepting responsibility and to re-impose, if not increase, the sentence vacated herein. To say that Price is no stranger to the criminal justice system is *447 an understatement. At the time of the offense on which he is to be resentenced, i.e., felon in possession of a firearm and ammunition, see 18 U.S.C. § 922(g)(1), he was on double-probation in the District of Columbia, where he has twice been convicted of crimes: one time for domestic violence, the other for possession with intent to distribute cocaine. See Appellee’s Record Material at Tab 10, p. 2. And if the government adequately establishes the information in the pre-sentence investigation report regarding the two Maryland offenses, the sentencing court can add those two offenses to his conviction tally. Up to now, Price’s criminal life has been charmed; the sentencing authorities have imposed suspended sentences and probation for his four convictions. This plainly has served neither Price nor the community well. As the original sentencing court observed, Price “just does not seem to learn. He does not learn.” Sentencing Tr. of 7/17/03 at 8; see id. at 10 (“If he[ ] were a novice I might feel differently but the fact that two other courts have given him a break and he didn’t learn from those prior experiences does not encourage me to think that he is serious about changing his life style.”). Given that Price’s public criminal record reveals a man determined to burnish his criminal credentials and at society’s expense — two factors appropriate for consideration on resentencing, see 18 U.S.C. § 3553(a)(1) & (2)(C)[1] — I believe the sentencing court could reasonably decline to lessen his punishment in any way, including by considering his alleged acceptance of responsibility.
As to the two Maryland convictions, I do not agree that, on remand, the government must “meet its burden under Richardson.” Maj. Op. at 445. In Richardson, we held that, under the Guidelines, the sentencing court could not “turn to potentially unreliable second-hand information in designating a prior offense as a crime of violence.” 161 F.3d at 738. We explained that the description of the defendant’s prior conviction in the pre-sentence report failed to “reliably indicate the precise crime to which appellant pled guilty” because “there was simply no way of knowing at sentencing whether this description was obtained from a legitimate and reliable source, such as a charging document, a plea agreement, or a previous presentence investigation report adopted by the state court.” Id. at 737-38 (emphasis added). The reason such pin-point accuracy was necessary, however, was that the prior conviction had to constitute a “crime of violence” in order to be used in computing the defendant’s offense level. Id. at 737. But “offense levels,” “adjustments,” “departures” and all of the other Guidelines argot has been jettisoned by Booker. We now operate in a “back to the, future” sentencing world when, pre-Guidelines, all that our Circuit required of the government in this regard was that it submit “some verification,” — that is, any “evidence of a sufficiently reliable caliber” — to support the information that it supplied the sentencing court and that the defendant challenged. See United States v. Lemon, 723 F.2d 922, 934, 942 (D.C.Cir.1983); United States v. Bass, 535 F.2d 110, 121 (D.C.Cir.1976). In my view, that is all that is required once again.

. In determining Price’s sentence on remand, the sentencing court must consider both "the history and characteristics of the defendant,” 18 U.S.C. § 3553(a)(1), and "the need ... to protect the public from further crimes of the defendant,” id. § 3553(a)(2)(C).